Secretary, United States Department of the Interior, et al. Mr. Leggett for the appellant, Ms. Roundtree for the appellees. May it please the Court, Poe Leggett, Continental Resources. The Federal Royalty Act generally requires the Interior to issue decisions in royalty appeals.  Within 33 months of their commencement, subject to tolling by agreement of the parties. Our case concerns a denial of our appeal by lack of a timely decision that was made final by operation of law on June 17, 2013. The Department gave Continental actual notice of finality six weeks later. We had 180 days to bring suit, running from receipt of notice of the lessee of the final agency action. We filed 213 days after the action became final, 171 days after we received notice. The District Court held that we were deemed to have had constructive notice on the day that the decision became final by operation of law, making our suit 33 days late. But case law says that receipt of notice in every other statute that we have found means receipt of an actual notice from the agency. The government will say that in the context of the statutes, section 1724, a different rule has to apply. But the problem with the government's interpretation is that the phrase receipt of notice comes from section 1724 itself. That's the phrase that Congress chose when it overhauled the agency's royalty appeals procedure. The phrase in the statute is the same whether the decision is timely or tardy. And if Congress had intended a different rule to apply for tardy decisions so that they ran from date of finality, it would have said so. Why can't it be a phrase that applies to both contexts so that in a situation in which you have a decision before the 33 months, the receipt of notice occurs when the decision is mailed to you and it's received, and then when, as the statute spells out by its plain terms, no decision is made by 33 months, then there's a receipt of notice because anybody who reads the statute has noticed that there's a decision has been made as of the 33-month deadline. It's a decision against your party. Well, the reason not to go that way is explained in the impact energy decision from the Tenth Circuit because it is in contradiction of congressional practice. That case catalogs several statutes where a statute's elimination began to run from the date of finality of the action and others where receipt of notice is required. In this case, receipt of notice was required. And if the constructive notice approach that the district court followed, and which I think is what underlies your question, Your Honor, if that were followed, that effectively takes one category of appeals and moves them into a camp where Congress could have said finality on the date. I mean, I'm sorry, the clock runs on the date that it becomes final. I mean, there's no doubt, as is often the case, Congress could have said something that would be clearer. That's definitely true. But I think just the question is what's the best way to deal with the statutory language that we have in front of us? And the other cases that you rely on for construction of the term receipt of notice, do they involve a statute that has a provision like this one that says that there's deemed to be a decision on the expiration of the 33 months? There is one, the Federal Tort Claims Act. Yeah, that's the only one. Six months the government has. And even though the decision is deemed final or can be deemed final, the government still has to issue mail, a notice of finality, a notice of final decision. And in Barnes' case, another Tenth Circuit case, that court looked at the situation and said, no, these are two distinct clocks. So we would ask the court to be guided by that position here because these are two distinct clocks. It wasn't entirely clear when the 33-month period expired in your case, was it? Because there was a dispute about the extension. That is correct. And there was a dispute, and it was caused by a disagreement not over the text of the statute itself, but over the terms of a tolling agreement between the parties. Right. And the Board of Land Appeals didn't even order the parties to brief that, or at least our brief was not due until after it later determined the statute had expired. So – I mean, there may be a situation where there's – I guess you could think of this in terms of defining what notice means. When the party that has the opportunity to bring the suit actually knows that the 33-month period clearly expired, there is a question whether the 180 days starts running from that point because they've had actual notice. They know it. They know the period expired as well as the Department of Interior knows. But that, you know, could save that issue for another day because that's not the situation here. Well, I agree with Your Honor on that point, although I think Ms. Roundtree will try to persuade you otherwise. But what she's basically asking the court to do is to adopt a nostradamus exception to the rule on receipt of notice. If we had correctly foretold how the IBLA would rule on our dispute, then we should be deemed to be on notice as of the date we picked. Now, in the appendix to the record at 194 and 95, we showed we were no nostradamus. We had argued from March 10 or no later than June 15. The Board picked June 17. So can I ask you if, under your interpretation, if the 33 months passes and there's been no decision, then the regime that you would think should happen is that then the agency should mail you something that lets you know that the 33 months has elapsed, and then you'd have notice. Is that right? That's correct. And if they send you that kind of document and they say, I'm hereby notifying you that the 33 months passed on such-and-such date, which is looking back two weeks, what's the trigger date? The date we received the notice. So even though the 33 months passed two weeks ago, it would be, and then notice tells you that that's when it passed and that's when the decision was made, the triggering date would be the date that you got notice that the 33 months has already passed. That's correct. And even in most timely appeals, lessees would not receive notice until sometime after the final decision was actually issued. So there's almost always that kind of delay. There's going to be a lag period. If I may, before I sit down, I would like to call the Court's attention to page 150 in the appendix. Identified there is a Miss Amber Eller, a hardworking civil servant whose job it is to keep track of the 33-month clock for the government. If she is told that she ought to send notice out to parties that their appeal time or the 33-month period has lapsed, she will. And then the government's concern about an open-ended statute of limitations will dissolve. After all, the Administrative Procedure Act requires prompt notice of denials of decisions by the OSC 555E, and that notice will create certainty in the operation of this statute. I'll reserve the rest of my time. Thank you. Good morning, Your Honors. May it please the Court to narrow roundtree for the United States. As a threshold matter, the case before this Court arises only under the Royalty Act, and the Court need not look to any other statute to determine what it means for an administrative lessee to receive notice under Section 1724 because, one, that meaning can be derived from the provisions in the legislative history of the Royalty Act itself, and, two, the Act simply states that a lessee must be in receipt of notice, but the Act does not place any restrictions on the way in which receipt may be accomplished. Nor does the Act rule out the possibility that receipt may indeed be accomplished by operation of another provision within the statute. Now, against that backdrop, as the Court decides the notice issue in this case, your analysis can be informed by looking at the way in which notice played out in the context of this case. The case arose as a royalty dispute in which the Department issued an order to Continental directing that it pay just shy of $1.8 million in additional royalties that were owed to the United States. Now, when Continental made the decision to administratively appeal from that order, the crucial time frames that are set forth in the statute went into effect and governed Continental's appeal. That took place from the very moment the administrative appeal was filed, and it continued through throughout the process. So your colleague on the other side says the same thing basically happens under the FDCA. Well, under the FDCA, if you'll read, there's no notice requirement that's associated with the deemed final decision provision. So though it does have a deemed final provision, there's no notice requirement associated with it. So it actually has no application to this case. I think perhaps they just relied on it because it has a deemed final provision, but it really adds nothing to this case because there's no notice requirement associated with it. What happens under the FDCA then when a decision enters in by operator because the period is lapsed? Under that statute, I believe it reads that the ‑‑ I'm sorry. It states that the failure of an agency to make a final disposition of a claim within six months after it is filed shall at the option of the claimant at any time thereafter be deemed a final denial of the claim for purposes of this section. And that's not ‑‑ So essentially it's exhaustion in that statute. Indeed. Right. Now, I'm sorry. Getting back to my point, when Continental decided to administrative appeal from the order, the crucial time frames that governed its appeal were set forth in the royalty act at subsections H and J, namely the 33‑month time frame and the 180‑day time frame. What about the tolling? Well, actually, that's an incorrect word. There is nothing in the statute that provides for the tolling of the 33‑month period. It states that there can be an extension to that period. Oh, extension, tolling. Well, no, actually, with all due respect, I think there's a difference. Tolling suggests that it stops running. There's nothing in the statute that says anything stops the 33‑month period from running, including if there's a dispute about the length of an extension. So even if the parties are grappling or disagreeing as to the extent of an extension or the length of an extension, the 33‑month provision is in place, and nothing in the statute says that it is tolled or that it just stops until that dispute is resolved. And if the dispute isn't resolved until after the 180 days have already elapsed? Well, to back up, if the dispute isn't resolved within the 33‑month period, the 33‑month period kicks in, and then the 180 days begin to run. Right, and so if the 180 days begin to run and there's no definitive resolution of the dispute by the time the 180 days have run, then what would happen? Well, it's our position that once the 33‑month period kicks in and is activated and the legal consequences of it tick. But it doesn't kick in until the extension is over. There's nothing in the statute that supports that reading. There's nothing that tolls it. There's nothing that tolls the statute. The point I'm trying to make is that under the statute, 33 months are over. That's it. Everything goes into effect. There's a final agency action. The administrative appellant has a statutorily granted right to go to court. That's what the statute says. It doesn't say, oh, if there's a dispute about this extension, then we will stop the 33‑month clock from running. There's nothing that supports that. So the parties are not free to enter into an agreement extending an extension agreement? Oh, they may enter into an agreement, but my point is if there's a dispute as to what that agreement says, nothing stops the 33 months from running according to the language of the statute. I'm sorry. What would be the point of agreeing to an extension if it doesn't change the 33 months? If there's an agreement about the extension and it's in place, then you have the 33 months plus the time of the extension. If it's undisputed. In other words, if it's undisputed. You're just saying if they get into an argument about it. Right. There's nothing in the statute to provide for tolling or stopping the running of the 33 months. Now, for most ‑‑ It just seems odd. If there's a dispute, then by definition the parties don't have a common understanding of what the deadline is. And then if the dispute lapses on past 180 days, and it turns out that the dispute is resolved in a way that says that the 33 months has already passed, then it seems a bit unfair to the party that thought that it had a good claim about the deadline. That could be read as perhaps a fault of the way in which the statute plays out. But what the statute does tell a lessee is that you need to protect your interests because by the language, all that's here in the statute, if you read everything, the only thing you have and you know for sure is that when 33 months are up, all of the legal, as I said, the legal consequences of the provision kick in. So it's not necessarily unfair because a lessee always knows 33 months is an important time frame. And that's the point I was going to get to next is that for most lessees, including continental, it would be important to be particularly mindful of the time frames that are in the statute because ‑‑ and actually for them to be mindful of that time period from the very moment they file their administrative appeal throughout the process. And that's because the legal consequences of failing to heed those time frames or failing to protect their interests with respect to those time frames are extremely significant. And continental doesn't dispute this at page 26. This is so reminiscent of a problem that plagued the federal courts for years and years and years because the time limit for appeal ran from the entry of judgment, which was an act of the clerk of the court. And the only way that you could find out when that judgment was entered was to keep ‑‑ at some point it was before email or internet. You had to keep calling ‑‑ you had to call the clerk of the court every day to make sure. And so finally the federal rules were changed and required the clerk to give notice. And there's a separate rule that says if you don't get actual notice, then the time for appeal doesn't run. And it sounds to me like the same thing. Let me ‑‑ I'm not sure ‑‑ I understand what you said. I'm not sure the point that you're making. But let me ‑‑ to the extent you're grappling with notice, indulge me and let me explain the way notice plays out under the entirety of subsection H. It's short, but I think it will be helpful. Under subsection H.1, which is not this case, H.1 addresses circumstances in which the agency actually does issue a final notice, a final decision. In that circumstance, the agency can issue such a notice the day after the administrative proceeding begins or it can wait, or if it has to wait, until the day before the 33rd month ends. It can issue anywhere in that time frame. The lessee has no idea when the decision issues. The lessee has no idea what the decision says. In that instance, subsection J makes sure that the 180-day limitations period does not run until the lessee has received notice that there is a final agency decision. By contrast, let's go to the situation that applies here. That's H.2B, subsection H.2B. In that instance, the department does not issue a notice within the 33‑month time frame. But when the day after that 33‑month passes, the lessee knows. The lessee has actual knowledge. The lessee has actual notice that there is a final decision in its case. It's a deemed final decision. The lessee knows that it has a statutory right to go to court and seek judicial review of that final decision. I mean, not to quibble, but you could have an anomalous situation in which the decision comes down the day before the 33 months elapses and then the agency sends the notice of the decision and that notice doesn't get received until after the 33 months, right? Well, that would still fall within the time frame of the notice issued within the 33 months, and so the time runs under section J from the time the notice is received. But here, as I said, the lessee knows the day after the 33‑month. It knows there's a decision. It knows it can challenge it, and it knows what the decision says. The lessee knows that the decision is in the department's favor. So section J doesn't have to require that the lessee receive a piece of mail or a fax to tell it that there's a final agency action because the lessee knows that by operation of law. I see my time has run. I'd just like to close, if you don't mind, by making two short points. The first is that Continental is urging this court to adopt a fundamentally untenable construction of the Royalty Act. It's a construction of the act that's designed to get Continental out of the position it found itself in when, one, it failed to file its lawsuit within 180 days of the 33‑month time frame in the statute, and, two, it didn't file its lawsuit within 180 days of the June 15, 2013 date that Continental repeatedly and consistently advocated for. It's a construction of the statute that shuns all contextual meaning that could be derived from the provisions or the legislative history of the statute, and it's a construction that's at odds with Congress's intent in passing the Royalty Act amendments, and that was to provide for a swift and complete resolution of monetary royalty disputes. And for that reason, their construction should be rejected. Can I just ask you one factual question, which is how many cases are in ‑‑ do you have a sense of how many cases are in the pipeline such that if your position were not to prevail, which would mean that in any case in which no notice was sent, even though the 33 months has elapsed, the 180‑day clock is still alive, as I understand it, right? So if you lose, then for any decision that has already happened by virtue of the 33 months having elapsed, you haven't sent any notice because you didn't know you had to send a notice, and, in theory, review could still be had in those cases, if I'm understanding correctly. Maybe I'm not understanding correctly. But, Anna, I'm wondering how many cases ‑‑ do you have a sense of how many cases we're talking about? I don't know how many cases. And to be sure that I understood your question, you're essentially asking how many cases are in the pipeline that are such as this one, where the time, the 33 months ran, and there was no affirmative notice in addition to the operation. I do not know that number. I apologize. Before you sit down, I just looked at the statute, 24H1. And the very last sentence, that's the provision, as you know, that deals with the 33‑month period. The last sentence says the 33‑month period may be extended by any period of time agreed upon in writing by the secretary and the appellant, right? Yes. Yes. No, please, I hope you didn't misunderstand. An extension may be had. As long as the parties agree. An extension ‑‑ For any period of time. It could be an extension for any period of time. There can be an extension. There's no denying that. My point was, if there is a dispute about the length or duration of that statute, I mean, I'm sorry, of that extension, nothing in the statute provides that the 33‑month period is told until that dispute is resolved. The final point, I ‑‑ Suppose that the parties reach an agreement and it's in writing and the secretary signs off on it. And the dispute is whether the agreement is for 60 days or 150 days. Is the extension only for 60 days under your view? The parties agree it's for 60 days. Is the extension only for 60 days under your view? Is your hypothetical saying the parties both agree that it's a 60‑day extension? Well, no, no. The dispute is whether the extension was for 60 days or 150 days. Right. But they agree it was at least for 60. Okay. One party says it was for 150. The other says no, it's only for 60. When does the 33‑month period run? The 33 ‑‑ under the statute, the 33‑month period runs when it's over. When what's over? When 33 months from the date the administrative proceeding began. Even though the parties, their minimum agreement is a 60‑day extension? Under your hypothetical, if the dispute is still in place when the 33 months ran, I'm simply saying there's nothing in the statute that says that the 33‑month time period has to stop or is invalidated or is told. Nothing supports that. That's the only point I'm making. I understand the point you're making. But I'm saying nothing in the statute provides for that time period to stop. The last point I'd like to make is that, as we've demonstrated, Continental received notice of the final latency action by operation of law. So from the very moment it received notice, Continental had the ability and the control to take measures. Final agency inaction is what you're saying. Okay. But from the very moment it received notice of the fact that there was a final agency decision, Continental had the ability and the control to protect its interests by seeking judicial review within a time frame that satisfied the 180‑day limitations period under even the most restrictive reading of the 33‑month provision. Continental did not do so. Its lawsuit is time barred, and the judgment of the district court should be affirmed. Thank you. I know we had a little time left. Two minutes. Okay. You had two minutes left. I will beat that easily. Under the government's proffered construction, a lot of complications will arise. The 1996 law that created Section 1724 is called the Federal Royalty Simplification and Fairness Act. The government's interpretation is not simple, and it's not fair. On page 13 of our reply brief, I call the court's attention to legislative history that explained because the federal royalty program is overly complex, burdensome, and unfair to oil and gas exploration and development companies who seek to do business with the Department of the Interior, competition for both onshore and offshore leases is diminished. Not every federal lessee is an Exxon or even a Continental Resources. There are many small companies, especially in the West, who don't have high-priced Denver or Washington lawyers to advise them on the workings of the 33-month rule. Notice and receipt of notice will make this work. If the court has no further questions, we ask that the district court ruling be reversed. Thank you.  Thank you. The case will be submitted.
judges: Brown, Srinivasan, Randolph